## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| SOUTHWESTERN BELL | § | |
| TELEPHONE COMPANY, et. al, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 3:10-cv-1498-O |
| | § | |
| NEXT-G COMMUNICATION, INC., | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY

Before the Court are Defendant Next-G Communication, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion to Stay, Brief in Support, and Appendix in Support (ECF No. 53); Plaintiffs' Response, Brief in Support, and Appendices in Support (ECF Nos. 60-62); Defendant's Reply and Brief in Support (ECF No. 66); Defendant's Supplemental Documents in Support (ECF Nos. 80-81); and Plaintiffs' Response to Defendant's Supplemental Documents (ECF No. 84). Having considered the pleadings, the evidence, and the applicable law, the Court finds that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion to Stay should be and is hereby **DENIED.**

## I.    BACKGROUND

### A.    Factual Background

Southwestern Bell Telephone Company, BellSouth Telecommunications, Inc., Illinois Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, and

Wisconsin Bell, Inc. (collectively, "Plaintiffs") sued Defendant Next-G Communication, Inc. ("Next-G") for failure to pay intrastate, interstate, and international federal and state tariffs for use of Plaintiffs' telecommunications networks. *See generally* Pls.' Am. Compl., ECF No. 40. Plaintiffs are local exchange carriers ("LECs") that operate local networks in their designated service areas originating, transporting, and terminating local telecommunications traffic. *Id.* ¶ 11. In addition to carrying local calls, Plaintiffs originate calls that are carried to the platforms of long-distance providers, such as Next-G. *Id.* In exchange for allowing long-distance providers access to their local networks, Plaintiffs charge the long-distance providers "access charges." *Id.*

When a long-distance call is made, the long-distance provider bills the calling party for the call. *Id.* ¶ 12. In turn, the long-distance provider pays "originating" access charges to the LEC that originated the call and "terminating" access charges to the LEC that terminated the call. *Id.* ¶¶ 12-13. The rates, terms, and conditions of these access charges are set forth in the LECs' tariffs filed with the Federal Communications Commission ("FCC"). *Id.* ¶¶ 14-16. The originating and terminating LECs receive intrastate, interstate, or international tariffs from the long-distance provider, depending on the locations of the calling party and the receiving party. *Id.* ¶ 13.

Next-G provides long-distance phone service through prepaid calling cards. *Id.* ¶ 17. Prepaid calling cards function in the same way as a traditional long-distance call. *Id.* ¶ 18. Generally, the calling party gains access to the calling card provider's platform by dialing a "1-800" number, and the prepaid calling card provider transmits the call to the receiving party in another state or country. *Id.* Use of the 1-800 number alerts the originating LEC to charge the prepaid calling card provider for access charges. *Id.* Next-G, however, sells prepaid calling cards that give callers the choice to access Next-G's long-distance platform by calling a 1-800 number or a local

number.  *Id.* ¶ 25.  These local access numbers ("LANs") are provided to Next-G through its contracts with TW Telecom and Verizon, which are LECs that compete with Plaintiffs.  *Id.*; Def.'s Br. Supp. Mot. Dismiss 5-6, ECF No. 53-1.

When a calling party uses a LAN, rather than a 1-800 number, the call is routed through the network of TW Telecom or Verizon, rather than being carried straight to Next-G's platform.  Pls.' Am. Compl. ¶ 25.  In either case, Next-G sends the call to its ultimate destination, usually to an international location.  *Id.*; Def.'s Br. Supp. Mot. Dismiss 6.  The calling party's use of the LAN makes the call appear local, however, even if the call is ultimately terminated in another state or country.  Pls.' Am. Compl. ¶ 25.  Accordingly, when a call using a LAN originates on one of Plaintiffs' networks, Plaintiffs are unaware that the call is destined for Next-G's platform and may ultimately terminate in a long-distance area.  *Id.*  In this situation, Plaintiffs cannot distinguish between (1) truly local calls that begin and terminate in a local area, and (2) seemingly local calls placed through a LAN that are routed through Next-G's platform to a long-distance location.  *Id.* Thus, Plaintiffs do not know to bill Next-G for access charges for calls placed through a LAN.  *Id.*

Accordingly, Plaintiffs allege that Next-G owes them unpaid access charges, in the form of federal and state tariffs, for intrastate, interstate, and international calls that originate on Plaintiffs' networks using the LANs provided by Next-G's prepaid calling cards.  *Id.* ¶ 29-53.  Next-G moves to dismiss Plaintiffs' claims on the ground that the Court lacks subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because (1) Plaintiffs lack standing, (2) Plaintiffs' claims are not ripe for adjudication, (3) Plaintiffs' claims present a political question, and (4) the FCC has exclusive jurisdiction over Plaintiffs' claims.  Def.'s Br. Supp. Mot. Dismiss 2.  In the alternative, Next-G moves to stay the case and transfer to the FCC on the basis of primary

jurisdiction.  *Id.*

### B.      FCC's 2006 Order on Prepaid Calling Cards

On June 1, 2006, the FCC issued a declaratory order addressing, among other things, the applicability of access charges for calls made using prepaid calling card services.  *In re Regulation of Prepaid Calling Card Servs.*, 21 FCC Rcd. 7290, 7290 (2006), *vacated on other grounds*, *Qwest Servs. Corp. v. FCC*, 509 F.3d 531 (2007) [hereinafter the "2006 Order"].  At issue in the 2006 Order was the classification of two types of "enhanced" prepaid calling cards–menu-driven prepaid calling cards and prepaid calling cards that utilized Internet Protocol technology–as telecommunications services or information services.  *Id.* at 7291.  The distinction would determine whether prepaid calling card providers that sold these types of cards would be required to pay access charges to LECs that originated calls made on the cards and to contribute to the Universal Service Fund ("USF").  *Id.* at 7290.  In the 2006 Order, the FCC found that both types of prepaid calling cards were telecommunications services, and that their providers were therefore subject to access charges and USF contributions.  *Id.* at 7293, 7300.

After making this initial determination, the FCC expanded its holding to set forth rules for all prepaid calling card providers during the interim period.  *Id.* at 7298.  The FCC stated that such interim rules were necessary to "provide regulatory certainty and ensure compliance with [the] existing access charge and USF contribution requirements while [the FCC] consider[s] broader reform of [the] rules."  *Id.*

## II.      Rule 12(b)(1)

### A.      Standard

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction alleges that the court

lacks the authority to hear the dispute. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 470 (5th Cir. 2008). A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Smith v. Potter*, 400 F. App'x 806, 809 (5th Cir. 2010).

When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a "facial attack" or a "factual attack." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If the party merely files a Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If, however, a party submits evidence, such as affidavits or testimony, in support of its Rule 12(b)(1) motion, the moving party makes a factual attack on subject matter jurisdiction, and the nonmovant must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction. *IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, No. 3:06-CV-0038-D, 2006 WL 954010, at *1 (N.D. Tex. Apr.12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). While a district court is "empowered to consider matters of fact which may be in dispute," a motion to dismiss for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Williams v. Certain Underwriters At Lloyd's of London*, 398 F. App'x 44, 46 (5th Cir. 2010); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

B.     **Factual Attack**[1]

In their complaint, Plaintiffs allege that this Court has jurisdiction over Plaintiffs' claim for federal tariffs under the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 207, pursuant to 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claim for state tariffs under 28 U.S.C. § 1367(a).  Pls.' Am. Compl. ¶ 9.  Next-G attacks Plaintiffs' bases for subject matter jurisdiction by submitting evidentiary materials in support of its Rule 12(b)(1) motion to dismiss, and Plaintiffs have responded with evidence of their own.  *See generally* Def.'s App. Supp. Mot. Dismiss, ECF No. 53-2; Pls.' Apps. Supp. Resp., ECF Nos. 61-62; Def.'s App. Supp. Reply, ECF No. 68; Def.'s Supplemental Docs., ECF Nos. 80-81.  Accordingly, the Court will treat Next-G's Rule 12(b)(1) motion to dismiss as a factual attack on the Court's subject matter jurisdiction, and Plaintiffs must prove by a preponderance of the evidence that this Court has jurisdiction to hear its claim.  *See Paterson*, 644 F.2d at 523.

## III.    SUBJECT MATTER JURISDICTION

A.     **Standing**

Proper grounds for a Rule 12(b)(1) motion include the plaintiff's lack of standing to bring suit.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  To prove standing, the plaintiff must establish injury in fact, causation, and redressability.  *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Next-G argues that Plaintiffs lack standing to pursue their claims for access charges because Plaintiffs have not suffered an injury.  Def.'s Br. Supp. Mot. Dismiss 12.  Next-G contends that

---

[1] Rule 12(h)(3) provides that the court must dismiss an action if "the court determines at any time it lacks subject matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).  Therefore, should additional facts surface during later stages of this proceeding that divest the court of jurisdiction, the Court will at that time dismiss or stay the case.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Plaintiffs cannot prove injury because Next-G never contracted with Plaintiffs for their services. *Id.* at 12-13.   Next-G maintains that while Plaintiffs have contracts with the LECs that provide originating access services to Next-G, Next-G is not a party to those contracts, those contracts do not bind Next-G, and those contracts do not provide a means to measure the access charges allegedly owed by Next-G.  *Id.* at 13.

Plaintiffs argue that the lack of a formal contract with Next-G is irrelevant because Plaintiffs' tariffs have the force of law.  Pls.' Br. Supp. Resp. 14.  Plaintiffs further argue that although Next-G did not directly order services from Plaintiffs, Next-G "constructively" ordered services by failing to take reasonable steps to prevent unauthorized callers from gaining access to Plaintiffs' networks. *Id.* at 14-15.  Next-G concedes that tariffs carry the weight of law, but insists that Plaintiffs' tariffs do not apply to Next-G because of the lack of contractual privity between the parties.  Def.'s Br. Supp. Reply 7, ECF No. 66.

The Court finds that Next-G's argument falls short.   The FCC has declared that "presubscription is not the only way to 'order' service from a carrier and, thus, become a 'customer.'"  *In re United Artists Payphone Corp. v. N.Y. Tel. Co.*, 8 FCC Rcd. 5563, 5565 (1993). A party can establish an inadvertent carrier-customer relationship by constructively ordering services from that carrier.  *Id.* at 5565-66.  A party receiving access services from a carrier constructively orders those services where the party "(1) is interconnected in such a manner that it can expect to receive access services; (2) fails to take reasonable steps to prevent the receipt of access services; and (3) does in fact receive such services."  *Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680, 685 (E.D. Va. 2000) (citing *In re Access Reform*, 14 FCC Rcd. 14221, 14318-19 (1999)) (citing *In re United Artists*, 8 FCC Rcd. at 5565-66)).

7

In its reply, Next-G argues that it did not constructively order services from Plaintiffs because it was not interconnected with Plaintiffs' networks.  Def.'s Br. Supp. Reply 5-7.  Next-G contends that interconnectedness with Plaintiffs is a "physical impossibility" because Next-G does not own a transmission network.  Def.'s App. Supp. Reply Ex. B (Dale Aff.), ¶¶ 28-33, ECF No. 68.  Next-G fails, however, to point the Court to any FCC regulation or applicable case conclusively establishing that interconnection requires ownership of telecommunications facilities or equipment.  At this stage, therefore, Plaintiffs have met their burden to establish standing in this case.

### B.    Ripeness

Next-G next argues that Plaintiffs' claims are not ripe for determination.  Def.'s Br. Supp. Mot. Dismiss 14.  "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 311 (5th Cir. 2005) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)).  "Because ripeness is a component of subject matter jurisdiction, a court does not have the power to decide claims that are not yet ripe." *Avalon Residential Care Homes, Inc. v. City of Dall.*, No. 3:11-CV-1239-D, 2011 WL 4359940, at *5 (N.D. Tex. Sept. 19, 2011) (citing *Sample*, 406 F.3d at 312).

When determining ripeness, the two primary considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Avalon Residential Care Homes, Inc.*, 2011 WL 4359940, at *5 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)).  A

8

challenge to administrative regulations is fit for review if (1) the questions presented are "purely legal," (2) the challenged regulations constitute "final agency action," (3) further factual development would not "significantly advance the court's ability to deal with the legal issues presented," and (4) resolution of the issues "will foster effective administration of the statute." *Texas v. United States*, 497 F.3d 491, 498-99 (5th Cir. 2007) (citing *Abbott Labs.*, 387 U.S. at 149-54).

Next-G contends that Plaintiffs' claims are not yet ripe because the FCC's 2006 Order provides inadequate guidance for the instant dispute. Def.'s Br. Supp. Mot. Dismiss 14. Specifically, Next-G argues that in its 2006 Order the FCC addressed prepaid calling card providers' liability for access charges only where callers used 1-800 numbers to connect to a prepaid calling card provider's network, not where a LAN was used. *Id.* Next-G argues that after the issuance of the 2006 Order, LECs and prepaid calling card providers requested that the FCC clarify its position on access charge liability where local numbers are used, such that any action taken by the Court before an FCC determination would prematurely interfere with an ongoing administrative proceeding. *Id.* at 14-15.

Plaintiffs respond that the FCC's regulations and 2006 Order provide the rules necessary to adjudicate this dispute. Pls.' Br. Supp. Resp. 16-17, ECF No. 60. Plaintiffs argue that the FCC provided the applicable interim rule by requiring "all prepaid calling card providers" "to pay interstate or intrastate access charges." *Id.* at 16 (citing 2006 Order at 7298, 7300). Plaintiffs argue that there is no dispute that Next-G provides long-distance service through prepaid calling cards and is therefore subject to the 2006 Order. Def.'s Answer to Am. Compl. ¶ 17, ECF No. 42; Pls.' Sealed App. Supp. Resp. (Dale Dep. 31:14-22, 51:18-25), at App. 59, 64, ECF No. 62. Plaintiffs also point

out that Next-G agreed in its contract with TW Telecom that it could not use TW Telecom's services "as a substitute for carrier interconnection or switched access services," and acknowledged that "any use of service for the transport of originating or terminating pre paid calling card traffic is subject to the requirements outlined in the order contained in FCC 06-79 (June 30, 2006) [2006 Order]." Pls.' Sealed App. Supp. Resp., at App. 1, ECF No. 62. The contract further provided that Next-G agreed "to remit any intrastate or interstate access charges directly to the appropriate carrier." *Id.*

The Court finds that Plaintiffs' claims are ripe for review. The determinative issue in this case turns on a purely legal question–whether the FCC's interim rules declared in the 2006 Order apply to prepaid calling card providers that supply LANs to access their platforms. The 2006 Order constitutes final agency action because the order was "promulgated by order of the [FCC]" and there is "no hint that this regulation is informal, or only the ruling of a subordinate official, or tentative." *Abbott Labs.*, 387 U.S. at 151. The Court finds at this stage that additional fact-finding would not aid the Court's purely legal inquiry as to whether the FCC's interim rules apply to the facts of this case. *See Texas*, 497 F.3d at 499. Any factual disputes that may arise do not implicate "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Zen-Noh Grain Corp. v. Leggett*, No. 09-282, 2009 WL 961253, at *5 (E.D. La. Apr. 7, 2009) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). Rather, Plaintiffs assert that Next-G's liability rests on its failure to pay access charges or prevent the receipt of calls originating on Plaintiffs' networks in the past and continuing through the present. *See* Pls.' Am. Compl. ¶¶ 24-28. As such, the issues are fit for judicial determination. *See Avalon Residential Care Homes, Inc.*, 2011 WL 4359940, at *5.

The Court further finds that resolution of the issues will foster "effective administration" of

the Act because the interim rules declared in the 2006 Order explain the responsibilities of telecommunications providers in the context of prepaid calling cards. *See* 2006 Order at 7293-98; *see also* 47 U.S.C. § 153(50)-(51). Finally, Plaintiffs allege that they will be harmed by Next-G's continued use of their local networks without compensation unless the Court adjudicates the dispute. Pls.' Br. Supp. Response 23. The Court agrees. Accordingly, the Court finds that the case is ripe for review and that it does not lack subject matter jurisdiction on that ground.

### C.    Political Question

Next-G argues that Plaintiffs' claims assert a nonjusticiable political question. Def.'s Br. Supp. Mot. Dismiss 17. The political question doctrine is a jurisdictional limitation on federal courts that "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)).

Next-G argues that Congress delegated to the FCC the authority to address matters related to intercarrier compensation, and therefore the Court must defer to the FCC's "rulemaking power and authority." Def.'s Br. Supp. Mot. Dismiss 18. Next-G contends that to adjudicate the instant case, the Court would be forced to "expand or adopt communications policy," which it is without jurisdiction to do. *Id.* at 17-18. Next-G cites 47 U.S.C. §§ 151 and 251, and 47 C.F.R. § 69, in support of its contention that the FCC has exclusive jurisdiction over the instant dispute. *Id.* at 18. While Congress provided the FCC with the general power to execute and enforce the provisions of the Act, Next-G fails to point to language in these or any other provisions divesting this Court of jurisdiction to adjudicate the claims in this case. Indeed, Next-G fails to identify a single provision

11

of the Act that shows Congress's intent to preclude federal jurisdiction over the applicability and enforcement of an LEC's federal and state tariffs against a long-distance service provider.

Plaintiffs claim that Next-G violated their federal and state tariffs. Pls.' Am. Compl. ¶¶ 29-38. Such an allegation states a cognizable claim for relief under 47 U.S.C. § 203. *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132-33 (2d Cir. 2010) (holding that a claim to enforce the terms of an LEC's federal tariff, filed and approved pursuant to federal law, arises under federal law for the purpose of federal question jurisdiction). Indeed, one court has found that "[a]bsent discernible congressional intent to the contrary, the grant of jurisdiction bestowed upon federal courts under [28 U.S.C.] § 1331 remains intact to resolve the dispute over the interpretation of [a] federally created, indeed federally mandated, contract" such as an interconnection agreement between telecommunications providers. *See Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 759 F. Supp. 2d 772, 778-79 (E.D. Va. 2011).

Next-G makes a secondary argument that this Court lacks jurisdiction because the courts of appeal have exclusive jurisdiction to review final orders issued by the FCC. Def.'s Br. Supp. Mot. Dismiss 16. It is true that the courts of appeal have the exclusive jurisdiction "to determine the validity of all final orders of the [FCC]," 28 U.S.C. § 2342(1), and a district court must dismiss a complaint if it "directly attacks an FCC order or if it raises only issues that were conclusively decided by the FCC order, *Rural Iowa Indep. Tel. Ass'n v. Iowa Utils. Bd.*, 362 F.3d 1027, 1030 (8th Cir. 2004) (citing *Pac. Bell v. Pac. W. Telecomm, Inc.*, 325 F.3d 1114, 1125 (9th Cir. 2003)). However, where a party does not directly challenge the validity of an FCC order, but rather challenges another party's interpretation of that order, a district court has jurisdiction to adjudicate that dispute. *Rural Iowa*, 362 F.3d at 1030 (8th Cir. 2004); *see also Pac. Bell*, 325 F.3d at 1125

12

(finding that a district court had jurisdiction where neither side sought to re-ajudicate the issues that the FCC already conclusively determined, but merely asked the court to interpret the FCC's rulings).

Accordingly, the Court finds that the political question doctrine does not divest the court of jurisdiction over Plaintiffs' claim for violations of its federal and state tariffs.

## IV.   PRIMARY JURISDICTION

### A.   Legal Standard

The doctrine of primary jurisdiction is a "doctrine of judicial abstention whereby a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an initial decision on questions of fact or law within the peculiar competence of the agency." *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 456 (5th Cir. 1991) (emphasis removed). "The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182-L, 2008 WL 4387077, at *2 (N.D. Tex. Sept. 26, 2008) (citing *United States v. W. Pac. R.R.*, 352 U.S. 59, 63-64 (1956)); *see also Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir.1988). "[E]ach case must be examined individually to determine whether it would be aided by the doctrine's application." *Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A. 304CV2321P, 2005 WL 2219249, at *2 (N.D. Tex. Sept. 9, 2005). Even where referral to an administrative agency may be proper, a court "must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs

imposed on the parties." *Wagner*, 837 F.2d at 201.

While "no fixed formula for applying the doctrine of primary jurisdiction" exists, *Staton Holdings, Inc.*, 2005 WL 2219249, at *2, courts have examined the following factors to determine whether a court should abstain on primary jurisdiction grounds: "(1) whether the question is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Baykeeper v. NL Indus., Inc.*, No. 10-2591, 2011 WL 4537837, at *3 (3d Cir. Oct. 3, 2011); *S. New England Tel. Co.*, 624 F.3d at 136 n.4; *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n*, No. 10-02341 (ABJ), 2011 WL 3240597, at *9 (D.D.C. July 29, 2011); *Centurytel of Chatham, LLC v. Sprint Commc'ns Co.*, No. 09-cv-1951, 2010 WL 5648871, at *4 (W.D. La. Dec. 15, 2010).

### B.    Analysis

#### 1.    Technical or Policy Considerations Within the FCC's Field of Expertise

Next-G argues that the Court should refer the case to the FCC because the 2006 Order addressed access charges only in the context of prepaid calling card traffic originating through 1-800 numbers, and did not address traffic running through LANs.  Def.'s Br. Supp. Mot. Dismiss 19. Next-G urges the Court to find that the application of access charges in this context is an issue "committed to the expert judgment of the FCC." *Id.* at 20.  Next-G cites a number of cases in which courts have abstained from adjudicating disputes regarding interpretation of an FCC order upon finding that the issue involved technical expertise in the FCC's field.  *See id.* at 20 n.42; *see also Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1089-90 (9th Cir. 2006); *In re StarNet, Inc.*,

14

355 F.3d 634, 639-40 (7th Cir. 2004); *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995); *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir. 1993); *Greene v. T-Mobile USA, Inc.*, No. C07-1563RSM, 2008 WL 351017, at *XXX (W.D. Wash. Feb. 7, 2008).   Although the Court acknowledges that other courts have exercised their discretion to invoke the doctrine of primary jurisdiction when faced with an interpretation of an FCC order, the Court finds that the facts of the instant case do not warrant referral to the FCC.  *See Staton Holdings, Inc.*, 2005 WL 2219249, at *2.

Here, the Court finds that the language of the FCC's 2006 Order provides an adequate basis to adjudicate the parties' dispute.  The FCC provided interim rules in the 2006 Order applicable to "all prepaid calling card providers."  2006 Order at 7298.  While Next-G is correct that the FCC specifically contemplated prepaid calling cards that are menu-driven or use Internet Protocol transport in drafting the 2006 Order, the FCC made clear that the articulated rules would apply, at least on an interim basis, to all prepaid calling card providers.  *Id.*  In making this determination, the FCC emphasized that "immediate action" is "necessary to preserve universal service and provide regulatory certainty while the Commission considers systematic reform."  *Id.* at 7293.  The FCC found that "[a]ny uncertainty regarding the regulatory requirements applicable to prepaid calling cards creates incentives for providers to reduce exposure to charges they may owe or evade them altogether."  *Id.*  As such, the FCC issued the 2006 Order to "provide a level regulatory playing field for calling card providers, thereby reducing the potential for continued 'gaming' of the system."  *Id.*

Therefore, even assuming that clarification of the access charge liability of prepaid calling card providers using LANs were a technical issue within the purview of the FCC, the Court finds that such expertise is not necessary to resolve the disputed issues in this case.  *See Columbia Gas*

15

*Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 520 n.15 (5th Cir. 1981) (finding that the court need not refer an issue to the FCC when "the standards to be applied in resolving the issue are within the conventional competence of the courts"); *see also Ford Motor Co.*, 2008 WL 4387077, at *2 (citing *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir.1976)) ("Not every case involving an issue with which an agency has expertise . . . is subject to postponement of judicial consideration under the doctrine of primary jurisdiction. A court need not postpone consideration of a case under the doctrine if it can resolve the issues before it, using the plain language of the regulations and the ordinary rules of construction.")[2]

### 2.    Substantial Danger of Inconsistent Rulings

Next-G argues that piecemeal litigation of the applicability of access charges to prepaid calling card providers using LANs creates the potential for inconsistent rulings, and that all interested parties would benefit from allowing the FCC to directly resolve the issue. Def.'s Br. Supp. Mot. Dismiss 22. Next-G cites *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166 (9th Cir. 2002), and *Tekstar Commc'ns, Inc. v. Sprint*, No. 08-1130, 2009 WL 2155930 (D. Minn. July 15, 2009) in support of its argument. Def.'s Br. Supp. Mot. Dismiss 22. The court in *Tekstar* referred a dispute to the FCC involving payment of access charges to an LEC that provided conference calling services to a long-distance services provider. *Tekstar*, 2009 WL 2155930, at *1-2. The *Tekstar* court concluded that "the potential for inconsistent or contradictory rulings is great in this case because the FCC currently has under consideration several different matters that address the same or similar issues." *Id.* at *2. The court in *Brown*, however, found that the district court

---

[2] While the Court notes that Congress granted the FCC authority to execute and enforce the provisions of the FCA, 47 U.S.C. § 151, Next-G does not make any substantive argument that the issues in dispute are particularly within the FCC's discretion, so the Court does not address that factor in its analysis.

improperly applied the doctrine of primary jurisdiction to a tariff dispute, and stated that "[p]rimary jurisdiction is not implicated simply because a case presents a question, over which the FCC could have jurisdiction, regarding the interpretation of a single tariff." *Brown*, 277 F.3d at 1172. The conflicting outcomes in these cases highlight the reality that no "fixed formula" exists in applying the doctrine of primary jurisdiction. *See Staton Holdings, Inc.*, 2005 WL 2219249, at *2. Rather, the Court must closely examine the individual facts of each case to determine whether referral is appropriate. *See id.*

3.   Prior Application to the FCC

Next-G argues that referral to the FCC is warranted based on the filing of subsequent petitions and commentary from various parties seeking clarification of prepaid calling card providers' responsibility for access charges under the 2006 Order. Def.'s Br. Supp. Mot. Dismiss 19-20. In support of its argument, Next-G points to the FCC's Notice of Proposed Rulemaking ("NPRM") issued on February 9, 2011, which seeks comment on, among other things, any "outstanding technical or policy issues related to intercarrier compensation reform." *In re Connect Am. Fund*, 26 FCC Rcd. 4554 (proposed Feb. 9, 2011). Next-G further argues that LECs and prepaid calling card providers have issued petitions for reconsideration and commentary requesting that the FCC clarify its position on access charge liability where local numbers are used. Def.'s Br. Supp. Mot. Dismiss 14-15. As such, Next-G contends that any action taken by the Court before an FCC determination of the liability issue would prematurely interfere with an ongoing administrative proceeding. *Id.* Next-G urges the Court to stay the instant action until the FCC establishes the comprehensive intercarrier compensation reform referenced in its NPRM. *Id.* at 20-21.

Plaintiffs argue that the FCC intended the guidelines laid out in its 2006 Order to apply to

all access charge disputes with prepaid calling card providers while it considers systematic reform on a more global basis. Pls.' Br. Supp. Resp. 21. Plaintiffs argue that the FCC did not intend for all disputes to be put on hold before prospective reforms for the intercarrier compensation system were issued. *Id.* Plaintiffs point out that such systematic reforms may not even address the payment of access charges by prepaid calling card providers, and, if applied prospectively, would not govern access charges accumulated before the issuance of the anticipated reforms. *Id.*

The Court agrees with Plaintiffs. The Court acknowledges that interested third parties have indicated that the 2006 Order may not directly address the facts of this case. *See generally* Def.'s App. Supp. Mot. Dismiss Ex. E, at App. 47-121; Def.'s Supplemental Docs. Supp., ECF Nos. 80-81. The Court also takes note of the fact that the NPRM specifically mentions as a potential issue for consideration by the FCC, the clarification of the 2006 Order as it pertains to the "the application of access charges to prepaid calling card calls placed using a locally-dialed number." *In re Connect Am. Fund*, 26 FCC Rcd. at 4777 n.1101. Nevertheless, the 2006 Order expressly provides interim rules for the payment of access charges by prepaid calling card providers, and the Court is fully capable of applying the FCC's order to the facts of this case.

The Court further notes that it is not inevitable that the FCC will choose to address the specific dispute at hand in any future systematic reform of the intercarrier compensation system, that any reform will happen relatively soon, or that such reform will apply retroactively to govern the facts of this case. In light of the Court's finding that the 2006 Order provides ample guidance for the Court to determine the parties' dispute without invoking the regulatory expertise of the FCC, the Court finds that the "need to resolve the litigation expeditiously" outweighs "the benefits of obtaining the agency's aid," thus warranting a refusal to stay the proceedings pending a resolution

before the FCC.  *See Wagner*, 837 F.2d at 201.

## V.     CONCLUSION

Based on the foregoing, the Court finds that it has subject matter jurisdiction over the case, and declines to transfer the case to the FCC.  Accordingly, it is **ORDERED** that Next-G's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion to Stay (ECF No. 53) is **DENIED**; Next-G's Motion to Continue Trial Setting (ECF No. 63) is **DENIED**; and Next-G's Motion for Leave to File Supplemental Record is **DENIED** as moot.

**SO ORDERED** on this **22nd day** of **November, 2011.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**